**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Najib A Hodge,

Plaintiff,

v.

JPMorgan Chase Bank NA,

Defendant.

No. CV-24-00932-PHX-SHD

**ORDER**

At issue is Defendant JPMorgan Chase Bank NA's ("JPMorgan") Motion for Summary Judgment and Request for a Vexatious Litigant Injunction, (Doc. 136), and Plaintiff Najib A. Hodge's First Motion for Summary Judgment, (Doc. 136). Briefing has closed, and the motions are ripe for review. (Docs. 172, 179, 212.) For the reasons stated below, JPMorgan's motion for summary judgment will be **granted**, and Hodge's motion for summary judgment will be **denied**.[1] JPMorgan's request for a vexatious litigant designation will be **denied** without prejudice.

## I. BACKGROUND

### A. Factual Background

On August 29, 2022, JPMorgan hired Hodge as an Associate Banker in one of its Phoenix, Arizona branches. (Doc. 133-1 at 3; Doc. 5 at 11.) JPMorgan terminated Hodge about four months later, on January 13, 2023. (Doc. 133-1; Doc. 5 at 13.) Hodge, an African American man, alleges that while he was employed with JPMorgan, he was

[1] I find these motions suitable for decision without oral argument. *See* LRCiv 7.2(f).

discriminated against because of his race and color, and that he was terminated in retaliation for reporting that discrimination. (Doc. 133 at 3; Doc. 5 at 4.)

The remaining facts are largely disputed. Hodge alleges that JPMorgan's discrimination started on his first day of work. He asserts that when he reported for work on August 29, 2022, three other new hires who were "of the [manager's] same race" "received full executive desks, in quiet, clean, serene, and undisruptive" offices, and were started on "training modules" for which they were given "short cuts." (Doc. 5 at 11.)[2] In contrast, Hodge was relegated to "the very noisy [and] disruptive Teller supply closet," and was not given any training or any "special instructions for short cuts." (*Id.*) Hodge alleges that he was later "harassed" for failing to complete the training modules.

Two days later, on August 31, 2022, Hodge alleges he "was harassed about speaking English." (Doc. 5 at 11.) His branch manager, Francisco G.,[3] told him, "This is a Spanish speaking branch!" and "went out of his way to make [Hodge] feel especially unwelcome." (*Id.*) Hodge reported Francisco G.'s conduct to HR on September 7, 2022. (Doc. 5 at 12.) Hodge alleges several other incidents involving Francisco G., namely that he "summarily denied" Hodge's request for "an appropriate training area" to take "a high-level training"; "violently verbally assault[ed]" Hodge when he "requested a schedule adjustment to attend a . . . mandatory telephonic training class"; and yelled at Hodge over the phone "for 10 [minutes] nonstop" within "earshot of the other branch employees." (*Id.* at 13.)

Hodge further alleges that Francisco G.'s treatment soon permeated the branch, encouraging similar behavior from other employees. (*Id.* at 14.) He asserts that a second manager, Isabel, denied his request for a desk, but granted a similar request by a Hispanic employee, and condoned rude behavior by other employees towards Hodge. (*Id.*) This

---

[2] Hodge's version of events is drawn largely from his Complaint, (Doc. 5), because it contains the most coherent narrative of his allegations.

[3] I refer to third parties by their first name and last initial only to protect their privacy. Hodge refers to his manager as both Frankie and Francisco. (*See* Doc. 5.) JPMorgan has identified his manager as Francisco G., and Hodge does not dispute that this is the individual he refers to.

included "antagonizing" and "mocking" Hodge with comments about "the racist trope Aunt Jemima on [ ] syrup bottles." (*Id.*)

In December 2022, Hodge alleges that Francisco G. crafted a "false year end report" that "read[] like a racist trope of the 50's," and that Hodge "neither signed nor submitted" the report. (*Id.* at 15.) Hodge alleges he was fired because of the "fraudulent year end report" on January 13, 2023. (*Id.*)

JPMorgan tells a different very story. JPMorgan asserts that Hodge began exhibiting signs of poor performance and unprofessional behavior on his first day of work, when his manager had to discuss time management and prioritization with Hodge because he spent too much of his day onboarding. (Doc. 133-1 at 24.) Hodge responded to this feedback poorly, telling Francisco G. he was "sabotaging him" by assigning competing priorities. (*Id.*) Within a month of starting his employment, Francisco G. tracked several other performance issues, including that Hodge arrived late to work, slept during work hours, printed personal documents without permission, pressured the bank notary to notarize his personal documents, and repeatedly left a "secure door" open. (*Id.* at 24–25.) This behavior continued throughout his employment. (*Id.* at 26–27.)

Hodge also had conflicts with customers. (*Id.* at 27.) For example, he insisted on speaking Spanish to English-speaking customers. In October 2022, a customer complained that Hodge was mocking their accent. (*Id.*) According to an employee who witnessed the incident, a "customer came in to [the] branch speaking English," but Hodge "proceeded to speak Spanish to [the] customer." (*Id.*) Hodge's co-worker told him "several times" to speak English to [the] customer because [the] customer is speaking English." (*Id.*) Hodge then "proceeded to speak English but he did it mocking the customer's accent." (*Id.*) The customer left without "processing [their] transaction" and later filed a complaint. (*Id.*) JPMorgan received several other complaints from customers who reported that Hodge was treating them differently because of their nationality and accent. (*See id.* at 22 (Hodge told a customer that they spoke "broken English," and insisted on speaking to them in Spanish, when in fact the customer spoke Romanian and not Spanish); *id.* at 29 (client complains

that Hodge bowed to greet her, but did not do so with any other customers).)

Hodge's supervisors and co-workers also reported unprofessional conduct, including disrespectful behavior and, in one instance, that Hodge left a cashbox unattended. (*Id.* at 22.) In early September 2022, Francisco G. initiated Hodge's termination. (*See* Doc. 136-22; Doc. 133-1 at 44.) Hodge then submitted his first complaints of discrimination to Human Resources ("HR"). (*Id.*) Because of Hodge's complaint, Francisco G.'s termination request was put on hold. (Doc. 133-1 at 44.) After HR completed its investigation of Hodge's complaints and found that they lacked merit, Francisco G. reiterated his request for termination, and Hodge was terminated on January 13, 2023. (*Id.* at 22, 34–51.)

**B. Procedural History**

Hodge filed this action on April 24, 2024, and filed a First Amended Complaint ("FAC") two days later. (Docs. 1, 5.) The Court[4] granted his application to proceed in forma pauperis and allowed him to proceed on his Title VII claims of discrimination and retaliation based on race and color against JPMorgan. (Doc. 7; Doc. 125 at 1–2.) His remaining claims were dismissed. (*Id.*)

Since then, Hodge has filed numerous motions, notices, affidavits, supplements, and notices of errata. Many of these filings were procedurally improper and have been denied or stricken accordingly. (*See, e.g.*, Docs. 90, 125, 127, 159, 160, 167, 212.)

The bulk of Hodge's many filings were focused on a single lodged document. On May 12, 2025, Hodge lodged a "Statement of Facts, Supporting Exhibits, and Affidavits" containing seventeen attachments of affidavits, exhibits, and other materials. (Doc. 88.) I struck Doc. 88 because it did not comply with Rule 7 of the Federal Rules of Civil Procedure. (Doc. 90 at 1–2.) Hodge then filed numerous motions, notices, and affidavits seeking to reinstate or incorporate the Doc. 88 materials. (*See, e.g.*, Docs. 103, 110, 124, 128, 141, 145.)

---

[4] This case was assigned to several different judges before it was assigned to me. For orders preceding my tenure, I refer to "the Court."

In November 2025, I clarified the order striking Doc. 88. (Doc. 159.) I explained that Doc. 88 violated Rule 7 because it requested no relief and was not associated with any pending motion. To the extent it was meant as a statement of facts under Local Rule 56.1(a), it was also improper, because no motion for summary judgment was pending at the time and the Case Management Order had suspended the separate statement of facts requirement. (*Id.*) Because Hodge's motion for summary judgment appeared to include the evidence originally lodged at Doc. 88, I further noted that his requests that I accept Doc. 88 into the record were moot. (*Id.*) Doc. 88 is not part of the record. (*See* Docs. 88, 90, 159.)

The parties have now filed motions for summary judgment. (Docs. 133, 136.) JPMorgan moved for summary judgment on October 24, 2025. (Doc. 133.) Its motion also requests that I designate Hodge a vexatious litigant and impose pre-filing restrictions on him. (*Id.*) Hodge did not respond to JPMorgan's motion, but he filed his own motion for summary judgment two days after the dispositive motion deadline. (Doc. 136.) I granted him leave to file his motion late, and I will consider it on its own and as an opposition to JPMorgan's motion. (Docs. 136, 138, 159.) *See Denton v. Bibb,* 2023 WL 5155787, at *1 (E.D. Cal. Aug. 10, 2023) ("The Court will treat Plaintiff's motion for summary judgment as also being an opposition to Defendants' motion for summary judgment."). JPMorgan responded to Hodge's motion, and Hodge replied. (Docs. 172, 212.)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Not all facts are material, and not all disputes are genuine. A "fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). Courts "must view the evidence in the light most favorable to the nonmoving party

and draw all reasonable inference[s] in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

The moving party bears the initial burden of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the burden is on the nonmoving party to "cit[e] to particular parts of materials in the record" to establish that a genuine issue of material fact *does* exist. Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 322–23. Even pro se litigants must marshal some evidence to support their claims. *Cornelio v. Wassermann*, 2012 WL 3028344, at *2 (D. Ariz. July 24, 2012), *aff'd*, 582 F. App'x 717 (9th Cir. 2014) ("A pro se nonmoving party must still present some significant probative evidence tending to support the complaint to survive summary judgment." (quotation marks omitted)).

## III. DISCUSSION

Hodge claims he was terminated illegally because of his race and color, and in retaliation for reporting discrimination in the workplace, and seeks to recover damages pursuant to Title VII of the Civil Rights Act of 1964.[5] *See* 42 U.S.C. § 2000e-2(a) (discrimination); 42 U.S.C. § 2000e-3(a) (retaliation). Before I address Hodge's discrimination and retaliation claims, I first consider what evidence is properly before me.

### A. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Courts may properly disregard evidence produced after the close of discovery, *Fallar v. Compuware Corp.*, 202 F. Supp. 2d 1067, 1079 (D. Ariz. 2002) (citing Fed. R. Civ. P.

---

[5] Hodge's motion seeks relief that exceeds the scope of his FAC. For example, he invokes 42 U.S.C. § 1981 and requests various forms of injunctive relief. (Doc. 136-3.) Such claims are not properly before me. *Bohon v. Maxwell & Morgan PC*, 2018 WL 4445113, at *3 (D. Ariz. Sept. 17, 2018) ("The Court will not consider new theories raised for the first time at summary judgment.").

37(c)), as well as "unauthenticated documents" that could not be presented in an admissible form at trial, *Harlow v. Chaffey Cmty. Coll. Dist.*, 2022 WL 4077103, at *1 (9th Cir. Sept. 6, 2022). The correct focus is not on the admissibility of the evidence's form, but rather the admissibility of its content. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "A court must rule on evidentiary objections that are material to its ruling." *Rossi v. Badger Mut. Ins. Co.*, 2020 WL 9599646, at *4 (D. Ariz. Apr. 13, 2020). "An objection is material if the court considers the evidence in ruling on the motion for summary judgment." *Id.*

JPMorgan argues that I should not consider the evidence submitted by Hodge because (1) it was not produced during discovery, (2) it asserts legal arguments that have been rejected by prior orders, (3) the authenticity of the "EthicsPoint Documents" is dubious, and (4) his expert report was not properly disclosed and violates several rules of evidence.[6] (Doc. 172 at 4–9.)

**1. Failure to Disclose**

JPMorgan asserts that Hodge failed to produce any of his proffered evidence during discovery, and that I should sanction this conduct by not considering the evidence at summary judgment. (*Id.* at 4.) JPMorgan does not, however, submit any declaration or affidavit supporting this assertion. (*See id.* at 4–5 (citing their own Notice of Service of Discovery (Doc. 100) to support the fact that Hodge did not participate in discovery).) I will not disregard all of Hodge's evidence based solely on JPMorgan's unsworn statements in briefing.

Moreover, JPMorgan had notice that Hodge would submit this evidence at summary judgment. Hodge repeatedly attempted to file the evidence supporting his motion on the docket, citing, at various points, his obligations under the Federal Rules of Civil Procedure to produce discovery and supplement his disclosures. (*See* Doc. 159 (explaining that Hodge's motion for summary judgment contains the evidence originally filed on May 12,

---

[6] I do not address the evidentiary objections that are immaterial to my ruling. This includes JPMorgan's objections to Hodge's evidence offered in support of his damages.

2025, at Doc. 88, and rejecting Hodge's repeated attempts to reinstate Doc. 88).) Although I denied Hodge's many attempts to lodge evidence on the docket, JPMorgan has been aware of the evidence Hodge now presents since at least May 12, 2025, several months before the September 19, 2025 fact discovery deadline. Given Hodge's pro se status, and his frequent efforts to notify me, and therefore JPMorgan, of the evidence now before me, I will overrule the objection based on Hodge's failure to disclose.

**2. Duplicative Documents and Legal Argument**

JPMorgan next objects to Hodge's evidence because it asserts legal arguments that have already been rejected by prior orders. Hodge attached 32 documents to his motion for summary judgment. Some of these documents are duplicative and some are not evidence at all, (*see* Doc. 136-3 (proposed order directing that Hodge be appointed "Head of Human Resources" at JPMorgan and "shall have full and exclusive oversight authority"); Doc. 136-2 (a "Statement of Facts" requesting reconsideration of prior orders, reinstatement of Doc. 88, and arguing that JPMorgan has admitted certain facts by failing to object to Doc. 88).) Those that offer evidence include declarations authored by Hodge that describe the attached evidence, provide commentary on its legal significance, and make a "request for judicial action." (*See, e.g.*, Doc. 136-5 (describing attached emails, stating that they "reinforce[] corporate misconduct" and requesting that I "recognize JPMorgan Chase's failure to investigate discrimination complaints as procedural misconduct").) I will disregard the duplicative evidence, the documents that are not evidence, and any legal argument contained in Hodge's declarations. *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment.").

**3. The EthicsPoint Documents**

I will overrule JPMorgan's objections to Hodge's EthicsPoint Documents. JPMorgan implies that Hodge has fabricated these documents, which Hodge represents are

complaints he made through JPMorgan's online reporting system, EthicsPoint. (Doc. 172 at 8–9; *see, e.g.*, Doc. 136-19.) To support its argument that Hodge potentially violated Rule 11 by fabricating evidence, JPMorgan points only to their own evidence that Hodge raised his complaints of discrimination through JPMorgan's "phone hotline," rather than through EthicsPoint. (Doc. 172 at 8.) JPMorgan does not present any other evidence that the EthicsPoint documents are fabricated, and I decline the invitation to so find.

To the extent JPMorgan seeks to exclude the EthicsPoint documents because they are not authenticated documents under Federal Rule of Evidence 901, I will overrule the objection. *See Harlow*, 2022 WL 4077103, at *1 ("Courts must now consider unauthenticated evidence at summary judgment if the evidence can be presented in a form that would be admissible at trial.").

**4. Expert Report**

I will not consider Hodge's Expert Report. He submits two documents prepared by Verba L. Edwards, an "independent HR governance consultant." (*See* Docs. 136-26, 136-27.) Edwards's Report is deficient under Federal Rule of Civil Procedure 26(a)(2)(B). It does not include "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming" his opinions, or "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii), (vi). Rather, the Report consists of a series of conclusions without any meaningful description of the "basis and reasons" for Mr. Edward's opinions, his methodology, or any specific explanation of the standards against which he weighed the evidence he reviewed. Edwards's Report amounts to a list of Hodge's evidence, followed by conclusory declarations that the evidence proves that JPMorgan discriminated and retaliated against Hodge. Such expert testimony is not permitted by the Federal Rules. *See In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 967 (D. Ariz. 2007) (noting that "expert testimony that merely tells the jury what result to reach is inadmissible" and citing *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury

in making a decision, but rather attempts to substitute the expert's judgment for the jury's."))). I will sustain JPMorgan's objections to Edwards's Report.

**B. Title VII Discrimination Claim**

To prevail on his claim of unlawful termination based on race, Hodge "bears the initial burden of establishing a prima facie case of discrimination by introducing evidence that gives rise to an inference of unlawful discrimination." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996). For the purposes of the pending motions for summary judgment, I will assume that Hodge has met his prima facie showing. *See id.* The burden therefore shifts to JPMorgan "to produce evidence that it had a legitimate, nondiscriminatory reason" for terminating Hodge. *Id.*; *see Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (holding that when a plaintiff establishes a prima facie case, the "burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.").

JPMorgan has produced multiple nondiscriminatory reasons for terminating Hodge. JPMorgan asserts that Hodge was terminated because of poor performance and unprofessional behavior, and presents evidence to support its reasoning. That evidence includes documentation setting forth the reasons for Hodge's termination, including Francisco G.'s "Recommendation for Termination" form and an accompanying list of "Performance Concerns." (Doc. 133-1 at 22.) The Recommendation for Termination references several inappropriate behaviors and performance issues, including sleeping at work; making inappropriate comments to customers and leadership; receiving several customer complaints; and failing to "follow policy and procedure" by "leaving his cashbox unattended." (*Id.*) The list of "Performance Concerns" details several more issues. (*See* Doc. 133-1 at 24–29 (sleeping at work, failing to complete required trainings in a timely manner, being "demeaning" to co-workers and "argumentative and combative with branch staff," and repeatedly leaving a secured door open).)

These are "legitimate, nondiscriminatory reasons" for Hodge's termination. The

burden thus shifts back to Hodge, who must produce "specific, substantial evidence" that JPMorgan's reasons are pretextual.[7] *See Bradley*, 104 F.3d at 270. (holding that when an employer produces a legitimate reason for termination "the presumption of unlawful discrimination" arising from the prima facie showing "simply drops out of the picture" and the plaintiff must demonstrate that the employer's reasons are pretextual). Hodge "may show pretext either (1) by showing that unlawful discrimination more likely motivated [JPMorgan], or (2) by showing that [JPMorgan's] proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) (citation omitted). A plaintiff's "uncorroborated testimony alleging pretext is insufficient to persuade the Court 'that a discriminatory reason more likely motivated the employer.'" *Cornelio*, 2012 WL 3028344, at *5 (quotation marks omitted).

Hodge offers little by way of argument or evidence to rebut JPMorgan's evidence that he was fired for poor performance and inappropriate behavior and fails to meet the "specific, substantial evidence" standard required to show pretext. *See Bradley*, 104 F.3d at 270; *Coghlan* 413 F.3d at 1098. Indeed, most of his argument relies on his misconception that JPMorgan made relevant concessions by failing to object to Doc. 88. (*See, e.g.*, Doc. 136 at 5–9.) As I have explained before, Doc. 88 was stricken from the record, and JPMorgan had no obligation to respond or object to it. (*See* Docs. 88, 90, 159.)

Besides his arguments that JPMorgan has admitted liability by failing to respond to Doc. 88, Hodge presents (1) the complaints he submitted to HR through EthicsPoint, (Docs.

---

[7] JPMorgan argues that I should apply a heightened standard here because it is entitled to the same actor inference. (Doc. 133 at 8.) That standard applies when "the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time," *Bradley*, 104 F.3d at 270–71, and would require Hodge to make an "extraordinarily strong showing of discrimination," *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1097 (9th Cir. 2005). I decline to apply the same actor inference because JPMorgan has not presented any evidence that Francisco G. hired Hodge. (Doc. 133 at 8 (citing to Francisco G.'s termination recommendation, which only states that Hodge "was hired on 08/29/22" but does not identify who hired him).)

136-16, 136-17, 136-19, 136-20, 136-21, 136-22), (2) emails and text messages from HR employees following up on his complaints, (Doc. 136-5 at 6–7; Doc. 136-6 at 5–6; Doc. 136-7 at 7; Doc. 136-8 at 8), and (3) his many accompanying declarations, (*see, e.g.*, Doc. 136-7 at 1–5), and his FAC, (Doc. 5.). While this evidence does establish that Hodge submitted complaints of discrimination to HR, and that HR subsequently investigated those complaints, it is not "specific, substantial evidence of pretext."

Hodge's argument amounts to a request that I treat his allegations—as represented in his declarations and complaint—as sufficient to rebut JPMorgan's significant evidence that he was fired for poor performance and unprofessional behavior. But Hodge's declarations are entirely conclusory, and he fails to produce any evidence suggesting JPMorgan's reasons were pretextual. (*See, e.g.*, Doc 136-7 at 2 (stating that "HR knowingly provided false findings while dismissing critical evidence" and "fabricate[d] an investigation"); Doc. 136-8 at 3 ("HR acted in collusion with management"); (Doc. 136-10 at 3 ("HR and Legal understood that the easiest way to justify termination legally was to document misconduct through written warnings").) District courts may "disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015).

This leaves the allegations in Hodge's FAC. "A pro se plaintiff's verified complaint must be considered as evidence at summary judgment."[8] *Howard v. Fye*, 2025 WL 2751118, at *1 (9th Cir. Jan. 23, 2025). Hodge's FAC does not directly address JPMorgan's stated reasons for firing him. The closest it comes to addressing pretext are his allegations that Francisco G. submitted a "false year end report" that Hodge did not approve of or consent to, and that the report contained a "slanderous, narrative basis"

---

[8] "A complaint is 'verified' if it contains a sworn verification or declares that it is true and correct." *Brooks v. Hubbell*, 2024 WL 4804885, at *6 n.75 (D. Nev. Nov. 15, 2024); *see* 28 U.S.C. § 1746. Hodge's FAC is not, itself, verified, but it contains the complaint he submitted to the Equal Employment Opportunity Commission, which is signed and declares "under penalty of perjury that the above is true and correct." (Doc. 5 at 22.) The EEOC complaint encompasses many of the allegations in the FAC. I therefore construe the FAC as verified for the purposes of this order.

including "terms reflective of the Jim Crow 'an-black' [sic] concepts," including that he was "slow, unable to learn, doesn't comprehend, no ability to understand concepts, or to understand anything . . . walks around in a haze." (Doc. 5 at 1–2.) Despite Hodge's characterization of these descriptions as "Jim Crow anti-black concepts," they are consistent with JPMorgan's stated performance concerns. (*See* Doc. 133-1 at 22–29 (stating Hodge was fired for sleeping on the job, failing to follow protocol, taking too long to complete tasks, arriving at work late, and missing trainings).) His remaining assertions that Francisco G.'s year-end report was false and slanderous do not constitute "specific, substantial evidence of pretext." *See Ivery v. McDonnell Douglas Corp.*, 64 F.3d 666 (9th Cir. 1995) ("A plaintiff must present more than mere naked assertions in order to refute an employer's legitimate nondiscriminatory reason for terminating its employee."); *Johns v. Lew*, 2014 WL 1330095, at *3 (C.D. Cal. Mar. 31, 2014) ("The evidence must consist of more than a mere refutation of the employer's legitimate reason and a mere assertion that the discriminatory reason be the cause of the challenged action." (citation modified)).

Because Hodge has failed to identify "specific, substantial evidence of pretext," JPMorgan is entitled to summary judgment on Hodge's discrimination claim.

### C. Title VII Retaliation Claim

Hodge has also failed to raise a genuine dispute of material fact as to his retaliation claim. A Title VII retaliation claim follows the same burden-shifting framework as a discrimination claim. *See Lui v. DeJoy*, 129 F.4th 770, 782 (9th Cir. 2025). To make out a prima facie case of retaliation, Hodge must show that (1) he engaged in protected activity; (2) JPMorgan subjected him to an adverse employment action (here, termination); and (3) a causal link exists between Hodge's protected activity and his termination. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). To show a causal link, Hodge must present sufficient evidence to raise the inference that his protected activity was the likely reason for the adverse action. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

Hodge has failed to demonstrate a causal connection between his protected activity

and his termination. Francisco G. first requested Hodge's termination in early September 2022. Although the exact date of Francisco G.'s first request for termination is not clear, both parties submitted evidence that it preceded Hodge's complaints to HR. Hodge's first complaint was filed on September 7, 2022. (*See* Doc. 136-22; Doc. 5.) One of Hodge's grievances in his September 7 complaint is that Francisco G. "placed him in position to terminate him." (*See* Doc. 136-22.) Similarly, JPMorgan's documentation of its investigation into Hodge's complaints demonstrates that Francisco G. "tried to proceed with termination" "within [Hodge's] first couple of weeks" but because Hodge "opened a race Discrimination case against [Francisco G.]," his termination was placed on hold until his complaints could be investigated. (Doc. 133-1 at 44.) Thus, the record demonstrates that Francisco G.'s decision to terminate Hodge was not based upon his complaints to HR, and Hodge offers no evidence to dispute this sequence of events. *See Cohen*, 686 F.2d at 797 (adverse employment action which commenced before the employee engaged in protected activity does not constitute unlawful retaliation); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Because Hodge has not shown a genuine dispute of material fact as to the causal connection between his complaints and his termination, he has failed to establish a prima facie case of retaliation, and JPMorgan is entitled to summary judgment.

Even assuming Hodge has established a prima facie case for retaliation, JPMorgan has offered "legitimate, nonretaliatory reasons" for his termination. As discussed above, Hodge has not presented "specific, substantial evidence" to rebut JPMorgan's legitimate reasons for firing him. *See Lui*, 129 F.4th at 782 ("Once . . . [an employer] set[s] forth a legitimate, non-retaliatory reason for its actions [the plaintiff] must produce evidence that the stated reasons were a pretext for retaliation.") JPMorgan is therefore entitled to summary judgment on Hodge's retaliation claim.

## IV. VEXATIOUS LITIGANT DESIGNATION

"The All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). Before entering a pre-filing order, courts must (1) give the litigant notice and an opportunity to be heard; (2) compile an adequate record for review, including a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered." *De Long v. Hennessey*, 912 F.2d 1144, 1147–48 (9th Cir. 1990). In applying the third and fourth *De Long* requirements, courts should consider five substantive factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014) (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

JPMorgan requests that I declare Hodge a vexatious litigant. I decline to do so. Vexatious litigant designations are a significant penalty. *Id.* ("[I]n light of the seriousness of restricting litigants' access to the courts, pre-filing orders should be a remedy of last resort."). Hodge has filed only one case against JPMorgan. And while he has filed five others in this District,[9] that is not uncommon. *See Gray v. CTP Funding*, 2023 WL 12089903, at *2 (D. Ariz. June 9, 2023) (collecting cases where three and six prior cases

---

[9] *See Hodge v. Home Depot et al*, Case No. 2:24-cv-02171-JJT, (D. Ariz. Sept. 3, 2024); *Hodge v. Best Buy Co. of Minn.*, Case No. 2:25-cv-00112-MTL, (D. Ariz. Mar. 24, 2025); *Hodge v. Doordash Inc.*, Case No. 2:25-cv-02242-JAT, (D. Ariz. June 27, 2025); *Hodge v. Desai*, Case No. 2:25-cv-04235-CDB, (D. Ariz. Nov. 17, 2025); *Hodge v. NPA Genuine Auto Parts*, Case No. 2:26-cv-03101, (D. Ariz. June 27, 2025).

did not warrant a vexatious litigant designation, but 35, 40, 50, and 400 prior filings did). It is true that Hodge's filings in this case were often vexing, and, at times, so numerous as to require admonishment, but the revocation of his electronic filing privileges has stemmed the tide. I will therefore deny the request for a vexatious litigant designation without prejudice.

## V. CONCLUSION

Hodge has not produced specific, substantial evidence that JPMorgan's stated reasons for firing him were a pretext for race or color discrimination, and he has not shown a causal link between his complaints to HR and his termination. JPMorgan is therefore entitled to summary judgment on both of Hodge's Title VII claims. The request for a vexatious litigant designation is denied because a pre-filing order is not warranted on this record.

**IT IS ORDERED granting** Defendant JPMorgan Chase Bank NA's Motion for Summary Judgment (Doc. 133).

**IT IS FURTHER ORDERED denying** JPMorgan's Request for a Vexatious Litigant Injunction (Doc. 133) without prejudice.

**IT IS FURTHER ORDERED denying** Plaintiff Najib A. Hodge's First Motion for Summary Judgment (Doc. 136).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly, and to close this case.

Dated this 28th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge